Magistrate Judge S. Kate Vaughan

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TROY FAIRCHILD,<br><br>Defendant. | NO.  MJ25-546<br><br>COMPLAINT for VIOLATION<br><br>Title 18, United States Code, Section 922(g)(1) |

BEFORE, United States Magistrate Judge S. Kate Vaughan, Seattle, Washington.

The undersigned complainant, David Sellee, a Task Force Officer with the Federal Bureau of Investigation (FBI), being duly sworn states:

## COUNT 1

**(Unlawful Possession of a Firearm)**

On or about August 19, 2025, in Snohomish County, within the Western District of Washington, TROY FAIRCHILD, knowing he had previously been convicted of crimes punishable by imprisonment for a term exceeding one year:

Complaint - 1
*United States v. Troy Fairchild*
USAO No. 2025R00985

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

      i.     *Assault in the Second Degree*, in the Superior Court for Pierce County, under case number 22-1-02263-1, on or about September 29, 2023; and

      ii.    *Attempted Robbery in the First Degree*, in the Superior Court for Pierce County, under case number 04-1-03704-4, on or about November 30, 2004.

did knowingly possess, in and affecting interstate and foreign commerce, firearms, those are: a Diamondback DB15 .223 caliber rifle and a Palmetto State Armory Dagger .9mm pistol, that had been shipped and transported in interstate and foreign commerce.

All in violation of Title 18, United States Code, Section 922(g)(1).

## INTRODUCTION AND OFFICER BACKGROUND

1. I am a commissioned law enforcement officer with the Tulalip Police Department. I have over 16 years of experience in law enforcement and have worked as a detective for the last twelve years. I have been cross-deputized by the FBI as a Task Force Officer (TFO) assigned to the Safe Trails Task Force, an FBI-led program that works with federal, state, local, and tribal law enforcement to combat violent crime, drug trafficking, and other serious offenses in Indian Country.

2. As a Safe Trails TFO, I have actively participated in investigations of criminal activity, including but not limited to crimes against persons, crimes against property, narcotics-related crimes, and crimes involving the possession, use, theft, or transfer of firearms. I have also participated in the execution of search warrants and the seizure of evidence indicating the commission of criminal violations. Additionally, I have also testified under oath and affirmed to applications of search and arrest warrants.

3. My duties as a TFO include the enforcement of tribal, state and federal criminal laws relating to the possession, trafficking, and distribution of illicit substances, assaults, and firearm-related crimes. To earn TFO credentials, I successfully completed

Complaint - 2
*United States v. Troy Fairchild*
USAO No. 2025R00985

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the Federal Law Enforcement Basic Police Academy in 2009, and have since completed additional training on homicide, violent crime, drug interdiction, and human trafficking.

4.      This Affidavit is made based upon my personal knowledge, training, experience and investigation, as well as upon information provided to me and my review of reports prepared by other law enforcement personnel.  This Affidavit is made for the purpose of establishing probable cause for this Complaint and thus does not include each and every fact known to me concerning this investigation.

## SUMMARY OF INVESTIGATION

### August 19, 2025: Identification of fraudulent trip permit and **FAIRCHILD**

5.      On the morning of August 19, 2025, Tulalip tribal police officers observed an Acura RDX SUV bearing a suspected fraudulent trip permit parked at the Tulalip Resort Casino located at 10200 Quil Ceda Blvd, on the Tulalip Indian Reservation, in Snohomish County, WA.

6.      After the vehicle's two occupants exited the vehicle and entered the casino, law enforcement approached the vehicle to more closely observe the suspect trip permit. The permit was not legitimate but rather a photocopied fake. Based on training and experience, the officer knew that individuals will use fraudulent trip permits to avoid having license plates on stolen vehicles and/or to avoid paying for legal trip permits.

7.      After confirming the fraudulent nature of the trip permit, law enforcement entered the casino and approached the driver of the vehicle, later identified as **FAIRCHILD**.

8.      The officer activated his bodyworn camera and located **FAIRCHILD** at the slot machines with the vehicle's passenger, a female, B.G., whose full name is known to me. The officer informed **FAIRCHILD** that he was speaking to him for suspicion of using a fraudulent trip permit and asked **FAIRCHILD** to produce identification. **FAIRCHILD** responded that if he produced the ID card he had on his person, it would

get him into more trouble. The officer understood this to mean that **FAIRCHILD's** ID card was either stolen or forged. **FAIRCHILD** stated that he would give the officer his name verbally, and identified himself as Troy A. **FAIRCHILD**, born on June 7, 1985.

9. The officer detained **FAIRCHILD** and escorted him back to the Acura in the parking lot. The officer asked B.G. to provide her name, but she declined to do so. B.G. was not detained at this point but followed **FAIRCHILD** and the officer to the parking lot.

10. As **FAIRCHILD** and the officer walked to the car, **FAIRCHILD** stated that he had an outstanding arrest warrant from the Washington Department of Corrections. The officer searched **FAIRCHILD**'s name in a law enforcement database and confirmed that **FAIRCHILD** had an outstanding felony arrest warrant for *Assault in the Second Degree* issued by the Washington Department of Corrections.

<u>B.G. confirms firearms in the Acura</u>

11. In the parking lot, **FAIRCHILD** was placed in handcuffs and searched incident to arrest. During this search officers found a set of keys, including the keys to the Acura, as well as a wallet, 1 sheet of Lysergic Acid Diethylamide (LSD) and 2 counterfeited one-hundred-dollar bills. Within the wallet, officers found a forged Washington state identification card with a picture of **FAIRCHILD** but bearing another person's name. Officers also recovered a Muckleshoot tribal identification card bearing **FAIRCHILD**'s picture and an enrollment number. Officers later learned that this identification card was also forged.

Complaint - 4
*United States v. Troy Fairchild*
USAO No. 2025R00985



*Forged Muckleshoot tribal ID bearing **FAIRCHILD**'s name*

12.     Law enforcement asked **FAIRCHILD** for consent to search the vehicle which **FAIRCHILD** declined. The officer then requested a tow truck to impound the vehicle.

13.     B.G. then began asking **FAIRCHILD** to give consent to the search because she did not want to be without a vehicle for several days while the car was impounded. **FAIRCHILD** did not respond. The officer brought B.G. aside and asked her if **FAIRCHILD** had a firearm in the vehicle. B.G. stated that there was a firearm inside the vehicle which she claimed belonged to **FAIRCHILD**'s father.

14.     B.G. eventually identified herself and disclosed that she had multiple outstanding arrest warrants. B.G. was detained and transported for booking with the city of Marysville, WA for an outstanding misdemeanor warrant.

Complaint - 5
*United States v. Troy Fairchild*
USAO No. 2025R00985

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

15.     The Acura was secured with evidence tape and towed to Tulalip Police Department's impound lot. **FAIRCHILD** was transported by law enforcement to the Tulalip Police department.

Statements made by <strong>FAIRCHILD</strong> regarding firearms

16.     Prior to transporting **FAIRCHILD** to the police department, the arresting officer read **FAIRCHILD** his *Miranda* rights. **FAIRCHILD** acknowledged these rights and declined to make a statement.

17.     During the drive **FAIRCHILD** began asking the why B.G. was arrested. **FAIRCHILD** then began to ask the officer about a potential search warrant for the vehicle and the likelihood that a judge would grant it. The officer declined to speculate on what a judge would do. **FAIRCHILD** began asking the officer about the legality of felons possessing firearms under the U.S. Constitution. The officer responded that **FAIRCHILD** should not proceed on that belief as he would risk getting in trouble. **FAIRCHILD** responded that law enforcement caught him transporting something. The officer reminded **FAIRCHILD** that he had previously stated that he did not want to make a statement to law enforcement and asked **FAIRCHILD** if he now wanted to speak. **FAIRCHILD** responded "ask me questions" to the officer. The officer instructed **FAIRCHILD** that he would need to re-read him his rights unless he understood them. **FAIRCHILD** responded that he understood his rights and that he wanted to talk. **FAIRCHILD** asked the officer if the officer use it against him if **FAIRCHILD** made a statement. The officer responded that he could use **FAIRCHILD**'s statement against him. **FAIRCHILD** stated that he still wanted to talk.

18.     The officer asked **FAIRCHILD** what he meant by transporting something. **FAIRCHILD** stated that there was a gun in the vehicle which he put together for someone who was buying it from him. **FAIRCHILD** stated that it was an "AR." He stated that he made the gun with parts that he had ordered. **FAIRCHILD** said that he had the tools to manufacture firearms. He said his gun-making parts were all in the vehicle

Complaint - 6
*United States v. Troy Fairchild*
USAO No. 2025R00985

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and that the rifle was in the floor of the backseat in a rifle case. **FAIRCHILD** stated that he had been making guns for a few years.

<u>August 19, 2025: Search Warrant of Vehicle</u>

19.    Prior to obtaining a search warrant, law enforcement conducted a police canine dog sniff on the vehicle which was positive for the presence of controlled substance. Law enforcement obtained a search warrant of the vehicle from the Tulalip Tribal Court. While searching the main cabin of the Acura, officers found 2 grams of suspected methamphetamine and a rifle bag which was located where **FAIRCHILD** said it would be. In the rifle bag, officers found the lower frame of a handgun, 5 magazines filled with .223 ammunition, an AR-style Diamondback DB15 .223 caliber rifle, and multiple rifle parts which were suspected as parts used by **FAIRCHILD** to manufacture firearms.



*Rifle found in rifle bag*



*Lower Receiver found in rifle bag*

Complaint - 7
*United States v. Troy Fairchild*
USAO No. 2025R00985

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



*Rifle parts found in rifle bag*

20.    The glove compartment of the vehicle was locked but law enforcement was able to unlock it using a key seized incident to arrest from the person of **FAIRCHILD**. Within the glove compartment law enforcement located a Palmetto State Armory Dagger 9mm pistol with a loaded magazine inserted.



*Pistol found in glove compartment*

21.    Within the trunk, officers located an extended 9mm magazine with 30 rounds of ammunition as well as another loaded magazine of the same type as the one

Complaint - 8
*United States v. Troy Fairchild*
USAO No. 2025R00985

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

inserted into the Palmetto State Dagger pistol. Law enforcement also found another fraudulent trip permit within the trunk.



*Items seized during search of Acura*

### INTERSTATE NEXUS OF FIREARM

22.    Bureau of Alcohol, Tobacco, and Firearms (ATF) Special Agent Brian Arnold, an agent who is an expert at conducting interstate nexus reviews, has determined that the firearms referenced in Count 1– a Diamondback DB15 .223 caliber rifle and a Palmetto State Armory Dagger 9mm pistol – are "firearms" as defined by federal law. Special Agent Arnold also determined that these firearms were manufactured outside of the State of Washington and thus traveled in interstate and/or foreign commerce, in order to be received or possessed in the State of Washington.

### CRIMINAL HISTORY

23.    I have reviewed criminal history documents relating to **FAIRCHILD** and found that he was previously convicted of at least the following crimes punishable by a term of imprisonment exceeding one year:

Complaint - 9
*United States v. Troy Fairchild*
USAO No. 2025R00985

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

i.  *Attempted Robbery in the First Degree*, in the Superior Court for Pierce County, under case number 04-1-03704-4, on or about November 30, 2004.

ii.  *Assault in the Second Degree*, in the Superior Court for Pierce County, under case number 22-1-02263-1, on or about September 29, 2023; and

24.    For each of the above-listed offenses, **FAIRCHILD** was sentenced to and served over a year of incarceration.

## CONCLUSION

25.    Based on the foregoing, I respectfully submit that there is probable cause to believe that **FAIRCHILD** committed the aforementioned offense.

I am submitting this Affidavit and Application electronically in accordance with Local Criminal Rule 41(d)(3).

David Sallee
Task Force Officer
FBI Safe Trails Task Force

The above-named agent provided a sworn statement attesting to the truth of the contents of the forgoing affidavit on the 28th day of August 2025. The Court hereby finds that there is probable cause to believe the defendant committed the offense set forth in the Complaint.

S. KATE VAUGHAN
United States Magistrate Judge

Complaint - 10
*United States v. Troy Fairchild*
USAO No. 2025R00985

UNITED STATES ATTORNEY
700 STEWART STREET, STE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970